IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 09-cv-02779-WDM-KMT

FETTER LOGIC, INC., a Colorado corporation,

    Plaintiff,

v.

ENVESTNET ASSET MANAGEMENT, INC., a Delaware corporation,

    Defendant.

## ORDER ON MOTION TO TRANSFER

Miller, J.

This matter is before me on the Plaintiff's Motion to Preliminarily Enjoin Envestnet Asset Management from Further Proceeding in Illinois Federal Court (Docket No. 8) and the Defendant's Motion and Memorandum of Law in Support of its Motion to Transfer this Action (Docket No. 11).  These motions are two sides of the same issue: Defendant wishes to transfer this case to the United States District Court for the Northern District of Illinois and Plaintiff seeks to have me enjoin Defendant from prosecuting the Illinois proceeding to the extent that it relates to the matters in dispute in this case.  A hearing on these motions and on Plaintiff's previously filed Motion for Temporary Restraining Order and Preliminary Injunction (Docket No. 5) was held on December 23, 2009.  After a review of the argument and evidence presented at the hearing and in the parties' briefs, I conclude that further oral argument is not required.  For the reasons that follow, the motion to transfer will be granted and Plaintiff's motion to enjoin will be denied.

Background

This is a contract case involving a buyout transaction between the two parties. Plaintiff Fetter Logic, Inc. ("Fetter"), a Colorado corporation, and Defendant Envestnet Asset Management, Inc. ("Envestnet"), a Delaware corporation headquartered in Chicago, Illinois, both sell software related products and services to the financial services industry. In 2008, they entered into a series of interrelated agreements in order to combine their businesses and cross-market their services and products. Pursuant to an Investment Agreement, executed December 19, 2009, Envestnet agreed to buy Fetter, acquiring 19.9% of Fetter's shares with options to purchase all shares at a later date. The Investment Agreement is governed by Colorado law and contains a forum consent provision, whereby "each of the parties hereto hereby agrees to submit to the non-exclusive jurisdiction of the federal or state courts located in Cook County, Illinois and the City and County of Denver, Colorado . . . and each of the parties hereto agrees not to contest such jurisdiction or seek to transfer any action relating to such dispute to any other jurisdiction." Investment Agreement, Exh. 1 to Defendant's Brief in Opp. To TRO (Docket No. 14-2) (emphasis added). Under the Investment Agreement, Envestnet agreed to "execute and deliver to [Fetter] a Broker Dealer Agreement," containing the terms set forth in an attachment (the "Term Sheet"). It was understood that broker dealer services would be provided by an affiliate of Envestnet called Portfolio Brokerage Services ("PBS"), a Colorado corporation.

At the same time, the parties entered in an Operating Agreement which was to govern how the parties would develop and sell products. The Operating Agreement contains a forum selection clause limiting all actions "arising under or in connection with"

the Operating Agreement to specific state and federal courts in Illinois. Exh. 2 to Defendant's Brief in Opp. To TRO(Docket No. 14-3).

On July 1, 2009, Fetter and PBS executed a Brokerage Services Agreement (the "PBS Agreement"). The PBS Agreement contains an integration clause providing that the agreement "represents the complete and exclusive statement of mutual understanding of the Parties in regard to the subject matter herein and takes precedence over all previous agreements relating to the same." Exh. 24 to Defendant's Brief in Opp. To TRO (Docket No. 14-25). The PBS Agreement also contains a forum selection clause limiting actions "arising under or in connection with" the agreement to Illinois courts.

On November 23, 2009, Envestnet filed suit against Fetter in Illinois state court for fraud and breach of the Investment and Operating Agreements.[1] On November 30, 2009, Fetter filed its complaint in this court alleging that Envestnet had breached the Investment Agreement by failing to deliver a definitive broker dealer agreement in compliance with the Term Sheet. Fetter thereafter filed a motion for preliminary injunction seeking specific enforcement as a remedy, that is, to compel Envestnet to execute a broker dealer agreement consistent with the Term Sheet.[2] PBS is not a party in either case.

---

[1] Fetter thereafter removed the case to federal district court. Fetter filed a motion to dismiss the Illinois action, which was thereafter withdrawn pending Envestnet's filing of an amended complaint. Another motion to dismiss has apparently been filed seeking to dismiss Envestnet's claims under the Operating Agreement but leaving pending Envestnet's other claims. Fetter's motion is based on Envestnet's alleged failure to comply with a dispute resolution provision in the Operating Agreement requiring service of notice of dispute and a prohibition on litigation until the parties' CEOs determine in good faith that resolution is not possible or 45 days after receipt of notice.

[2] I denied Fetter's motion at the hearing on December 23, 2009 on the grounds that Fetter had failed to demonstrate a likelihood of success on the merits or irreparable harm.

Discussion

Envestnet seeks to transfer the case pursuant to the forum selection clauses contained in the PBS Agreement and the Operating Agreement and argues that 28 U.S.C. § 1404(a) is the appropriate mechanism to do so. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The party moving to transfer a case pursuant to section 1404(a) bears the burden of establishing that the existing forum is inconvenient. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991) (citations omitted). Motions to transfer pursuant to this provision should be determined according to an "individualized, case-by-case consideration of convenience and fairness." *Id.* at 1516 (citations omitted). Among the factors a district court should consider are the following:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id.* (citing *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir.1967)). An action may be transferred under section 1404(a) at any time. *Id.* In general, "unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992).

Envestnet also seek to transfer the case on the grounds that the pending case in

Illinois was "first filed" and Fetter's claims are compulsory counterclaims to Envestnet's claims in Illinois. The Tenth Circuit has adopted the general principle that "when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case." *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982) (citations omitted). The power to dismiss or stay a duplicative action arises from principles of comity and a court's general power to administer its docket; however, determination of issues arising from multiple filings "do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). The purpose of the doctrine is to avoid duplicative litigation; thus, so long as the parallel cases involve the same subject matter, a district court should resolve both suits in a single forum. *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 349-50 (D.C. Cir. 2003). Identical parties and issues are not required; rather, the inquiry is whether there is "substantial overlap" between the cases. *See, e.g., Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997); *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996) ("Where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." (citation omitted)).

Envestnet argues that there is substantial overlap between the issues in this court and those in the Illinois case, that there is a significant danger of inconsistent verdicts, and that judicial inefficiencies will result from having two proceedings dealing with the same

subject matter. Envestnet also distinguishes the forum selection clauses in the Operating and PBS Agreements, which broadly apply to any disputes "arising under or in connection" with either agreement and <u>require</u> that such issues be heard in Illinois, from the forum consent clause in the Investment Agreement, which is more limited in scope and more permissive in that disputes may be heard in the <u>non-exclusive</u> jurisdictions of Colorado and Illinois. Envestnet also argues that PBS is a necessary party to this action but that if PBS is joined diversity will be destroyed, depriving this court of jurisdiction.

Fetter opposes transferring the case and seeks to prevent Envestnet from raising any issues arising out of the Investment Agreement in the Illinois case. It argues that only the Investment Agreement is at issue in this case, not the PBS Agreement. Fetter also contends that forum selection clause in the Investment Agreement contains an additional provision that "each of the parties hereto agrees not to contest such jurisdiction [in Colorado or Illinois] or seek to transfer any action relating to such disputes to any other jurisdiction." Fetter argues that this means that the parties agreed not to seek to transfer a case if it was properly filed in either Colorado or Illinois. I disagree; the plain language of this clause limits the parties' ability to transfer the dispute to any <u>other</u> jurisdiction, i.e., other than Colorado or Illinois. Since this is a motion to transfer to Illinois, not to a jurisdiction other than Illinois or Colorado, I disagree that the parties agreed not to transfer the case. Fetter also argues that Envestnet acted in bad faith by filing the lawsuit while pretending to negotiate with Fetter and did not serve notice of the lawsuit for some time after filing.

I agree with Envestnet that numerous factors weigh in favor of transferring this case to Illinois. First, despite Fetter's contentions, it is unclear to me that the issues in this case

6

can be considered solely under the Investment Agreement and without reference to the PBS Agreement and the Operating Agreement, both of which require disputes to be heard in Illinois. Fetter's entire case is premised on the notion that the PBS Agreement, which is undeniably a broker dealer agreement at least partially in compliance with the Term Sheet, does not satisfy Envestnet's obligations under the Investment Agreement. Therefore, extensive analysis of the PBS Agreement and the circumstances of its development will be inevitable. In addition, the PBS Agreement purports to be "the complete and exclusive statement of mutual understanding of the Parties in regard to the subject matter herein and takes precedence over all previous agreements relating to the same." If this provision were to be given effect, it would mean that the PBS Agreement is the operative agreement governing disputes concerning the provision of broker dealer services, not the Investment Agreement. As a result, at a minimum, the PBS Agreement might need to be rescinded before Fetter could obtain relief under the Investment Agreement. I also note that both parties appear to agree that the PBS Agreement was at least partially contingent on revisions to the Operating Agreement, which again implicates issues outside of the Investment Agreement alone. Under the circumstances, I cannot ignore the existence of the Operating and PBS Agreements and the parties' agreement contained therein to resolve litigation "in connection with" these contracts in Illinois.

Second, it appears that there is at least some overlap between the issues in this case and those raised in Illinois. The premise of the claims in the Illinois proceeding is that Fetter misstated its financial position in the negotiations leading up to the buyout agreements (thereby breaching the warranties and representations in the Investment Agreement and inducing Envestnet to enter into the deal by fraud), that Envestnet

discovered Fetter's true situation in April 2009 and planned to unwind the relationship, that Envestnet agreed to continue performance provided there was a major restructuring in the terms of the relevant agreements, that Envestnet insisted upon the execution of one or two major amendments to the Operating Agreement and went forward with the execution of the broker dealer agreement (i.e., the PBS Agreement) on the understanding that the amendment(s) would be signed by Fetter, and that Fetter thereafter refused to do so. These factual issues will certainly be involved in this action as Envestnet has made clear that its defenses to Fetter's claims here will be that Fetter's alleged breaches of the Investment and Operating Agreement resulted in the PBS Agreement in its current form. Fetter's solution, to enjoin Envestnet from litigating any issues related to the Investment Agreement in Illinois, is unworkable given the intertwining of these agreements and the common factual background of the disputes.

Since two of the three relevant agreements in the parties' relationship require that issues in dispute be litigated in Illinois and there is substantial overlap between this case and the first filed Illinois case, I turn to the equitable considerations for a motion to transfer in these circumstances.[3]  First, while Fetter has chosen this forum, Envestnet chose Illinois as the forum in its lawsuit.  There do not appear to be any particular hardships, other than some inconvenience to Fetter, if the case is litigated in Illinois rather than Colorado. Fetter's witnesses will most likely be in Colorado and Envestnet's in Illinois, which means this factor is somewhat evenly balanced.  It is unclear where the agreements were

---

[3]Considerations under section 1404 and under the "first-filed" rule are similar, involving questions regarding the comparative advantage and interest of each forum in resolving the dispute.

negotiated or executed or where the evidence is located; again, it appears that both parties will have some of the relevant evidence. A judgment from an Illinois court will be enforceable and there do not appear to be any obstacles to a fair trial in that court. Although Fetter complains that the Illinois court would not have subpoena power in Colorado, Fetter has not identified any witnesses whose presence would be impossible to secure at trial or for discovery, and so this factor does not appear to be dispositive. There do not appear to be any conflict of law issues. Although the Investment Agreement is governed by Colorado law, which weighs in favor of retaining the case, the Operating Agreement is governed by Illinois law, which again means this factor weighs evenly for hearing the case in either jurisdiction. Illinois and Colorado both have an interest in the matter as the parties are residents of the state, but I am not persuaded that either state has a greater interest.

Fetter makes much of the fact that Envestnet did not immediately notify Fetter of its lawsuit; Fetter accuses Envestnet of "laying in the weeds" in order to win the race to the courthouse. Given that the Operating Agreement requires that lawsuits relating to it be filed in Illinois, and the Investment Agreement permits a lawsuit to be filed anywhere but provides consent to jurisdiction in Illinois and Colorado, it is not clear to me that Envestnet's conduct is duplicitous. Even if Fetter had filed first, given the forum selection clauses at issue Envestnet would likely still have had to file its lawsuit in Illinois and then sought to transfer the Colorado action based on many of the same arguments presented now. I have also reviewed the email communications between the parties in the week after Envestnet filed its lawsuit but before Fetter filed here. I see nothing to indicate that Envestnet attempted to lull Fetter into believing that resolution was imminent; rather, the

communications indicate that the issues were serious and needed to be discussed at a Fetter board meeting on an emergency basis.

Given the discussion above, I need not determine whether PBS is a necessary party whose joinder would destroy diversity, as there are other adequate bases to transfer the case.

Exercising my discretion, I conclude that the interests of comity, judicial efficiency and the importance of giving effect to the negotiated contract provisions argue in favor of transferring this case to the Northern District of Illinois.

Accordingly, it is ordered:

1. Plaintiff's Motion to Preliminarily Enjoin Envestnet Asset Management from Further Proceeding in Illinois Federal Court (Docket No. 8) is denied.

2. Defendant's Motion and Memorandum of Law in Support of its Motion to Transfer this Action (Docket No. 11) is granted. This case shall be transferred to the United States District Court for the Northern District of Illinois.

3. Defendant's Motion to Strike Plaintiff's Reply Brief (Docket No. 31) is denied as moot.

DATED at Denver, Colorado, on January 6, 2010.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge

PDF FINAL